# Exhibit M

Second Amended Complaint filed
in the State Court of Clayton County on
February 19, 2026

**IN THE STATE COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| J.S., | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | FILE NO.: 2025CV06704 |
| | : | |
| SHREE LAXMI HOTEL, LLC D/B/A MOTEL 6; TRINITY SNK CORPORATION F/K/A GLOBAL MANAGEMENT & INVESTMENT CORPORATION; AND JOHN DOES #2-5, | : | |
| | : | |
| *Defendant*. | : | |

# COMPLAINT – 2ND AMENDED

Matthew B. Stoddard, Esq.
Keith N. Evra, Esq.
THE STODDARD FIRM
1534 N Decatur Road NE
Atlanta, GA 30307
P: 470-467-2200
F: 470-467-1300
Matt@legalhelpga.com
Keith@legalhelpga.com

**Attorneys for Plaintiff**

## TABLE OF CONTENTS


Introduction....................................................................................................................3

Procedural Issues............................................................................................................3

Plaintiff Is Trafficked for Sex at The Hotel…..……………………………………………...5

COUNT 1: State Law TVPRA Claims…………………...……..…………..............................10

COUNT 2: Premises Claims……………………………..........................................12

COUNT 3: Nuisance Claims………………………………..........................................13

COUNT 4: Federal Law TVPRA Civil Beneficiary Claims......……………………………14

Causation and Damages..............................................................................................16

Prayer for Relief............................................................................................................18

## INTRODUCTION

1. Defendant Shree Laxmi Hotel, LLC d/b/a Motel 6 is a domestic for-profit limited liability company that has owned Motel 6 located at 628 Southside Commercial Parkway, Jonesboro, Clayton County, Georgia 30236 (the "Motel 6") since at least 2011.

1a. Defendant Trinity SNK Corporation f/k/a Global Management & Investment Corporation ("Global Management") operated and managed the Motel 6 hotel located at 638 Southside Commercial Parkway, Jonesboro, Clayton County, GA 30236 during the relevant time-period.

2. Defendants have recklessly tolerated and sometimes participated in sex trafficking ventures at the Motel 6 for years, including the trafficking of Plaintiff.

3. From approximately January 1, 2018 through August 1, 2021, "Tay" repeatedly trafficked Plaintiff (age 17 for a portion of this time) for sex at the Motel 6 and was aided in that endeavor by the Defendants.

4. This lawsuit seeks to empower the victim (Plaintiff), take economic resources away from those who are benefiting from the trafficking (the Defendants), and reduce those resources to as to deter future trafficking. After all, Defendants are getting rich off of gender-based violence in the form of minor sex trafficking, and that needs to stop. Criminal prosecutors cannot win the battle alone.

## PROCEDURAL ISSUES

5. Given the nature of the case, Plaintiff is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed her full name to defense counsel or will immediately upon identification of defense counsel. When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court

permission for Plaintiff to proceed anonymously. Upon information and belief, Defendants will consent to Plaintiff proceeding without publicly disclosing her name.

6. Defendant Shree Laxmi Hotel, LLC d/b/a Motel 6 ("Shree Laxmi") can be served through its registered agent, Harshadkumar G. Patel. The registered agent address from the secretary of state website is 227 Shelton Drive, McDonough, Henry County, Georgia 30252.

7. Defendant Shree Laxmi was properly served with process in this matter.

8. Defendant Shree Laxmi is subject to the jurisdiction and venue of this Court.

8a. Defendant Global Management can be served through its registered agent, Joel M. Haber. The registered agent address from the secretary of state website is 2030 Avalon Parkway, Suite 200, McDonough, Henry County, Georgia, 30253.

8b. Defendant Global Management was properly served with process in this matter.

8c. Defendant Global Management is subject to the jurisdiction and venue of this Court.

9. Venue is proper in this Court because Defendants have an office in Clayton County (at the Motel 6) and because this tort occurred in Clayton County.

10. Defendant John Doe(s) #2-5 are commercial business(es) and/or individuals(s) engaged in operation, control, management, or in providing contracting services at the premises. The identities of John Doe(s) are unknown to Plaintiff at this time but are readily ascertainable to Defendants. Once the identities of John Doe(s) are discovered, this Complaint will be amended to substitute any party that is or may be liable to Plaintiff.

11. The incident that is the basis of this lawsuit occurred between January 1, 2018 and August 1, 2021, but the statute of limitations is tolled because neither Plaintiff's traffickers nor the "Johns" have been arrested and convicted for trafficking the Plaintiff. The tolling period is

based on O.C.G.A. § 9-3-99 as interpreted by *Harrison v. McAfee*, 338 Ga. App. 393 (2016) (*en banc*).

12. The statute of limitations is, at minimum, also tolled for Plaintiff's sex trafficking claims under O.C.G.A. §51-1-56 as she has brought this lawsuit within 8 years of the occurrence(s).

13. This civil lawsuit is not barred by the statute of limitations.

## PLAINTIFF IS TRAFFICKED FOR SEX AT THE HOTEL

14. In 2017, Plaintiff was seventeen years old and was introduced to an older man named "Tay."

15. Tay began selling Plaintiff for sex. Tay kept all of the commercial sex proceeds.

16. Plaintiff, both as a minor and after she turned 18 years old, was sold for sex repeatedly at the Motel 6 and with the assistance of Defendant over at least a three and half year period between approximately January 1, 2018 through August 1, 2021 for multiple days at a time and various periods of time.

17. During these multiple days at a time and various periods of time from approximately January 1, 2018 through August 1, 2021, Plaintiff was an invitee of Defendants' hotel.

18. *[Withdrawn]*

18a. During this period from approximately January 1, 2018 through August 1, 2021, Plaintiff's traffickers rented multiple rooms at Defendants' hotel from Defendants and Plaintiff was a guest and invitee of the Defendants at the hotel such that defendant owed Plaintiff a duty of care.

19. Defendants provided the room where the sex occurred, steered Plaintiff typically to the back and side of the property, and observed Tay selling persons for sex at the Motel 6 but continued to rent him multiple hotel rooms.

20. Money from the sex trafficking was thereafter used to book rooms at the Motel 6 on other occasions.

21. Plaintiff's trafficker took the money from the sex acts and used it to re-rent hotel rooms from Defendants, and then her trafficker again forced (through coercion, violence, and threats of violence) Plaintiff to have sex with men in exchange for money in the hotel rooms.

22. Defendants collected revenue from the rental of the room(s) at the Motel 6 in which Plaintiff was forced to have sex.

23. Defendants' staff and agents observed the following signs and symptoms of trafficking for Plaintiff / victim:

a. malnourishment, poor hygiene, fatigue, sleep deprivation, bruising, cuts, and other physical injuries;

b. lack of freedom of movement and constant monitoring by an older man;

c. no control over or possession of money;

d. constant and excessive requests for towels and sheets to housekeeping;

e. prohibition of some staff members from entering the hotel rooms;

f. large numbers of used condoms;

g. rooms rented daily by the same trafficker who would frequently pay with cash;

h. a trafficker renting multiple rooms over and over again;

i. a constant stream of male visitors entering the room one at a time, staying a short period, and then leaving;

j. many other sex workers and sex trafficking victims and pimps wandering the property; and

k. many other purchasers of sex wandering the property.

24. The Motel 6 is a known hotbed of prostitution and sex trafficking and Defendants' management should have known sex trafficking and prostitution was occurring at the property.

25. Defendant(s) knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' Palermo Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children also in 2000, and the passage of O.C.G.A. § 16-5-46 in 2007.

26. Defendant(s) knew or should have known that, in 2013, the acting Attorney General Sam Olens announced a statewide campaign, "Georgia's Not Buying It," to combat child sex trafficking. As part of the campaign, AG Olens' office "collaborated with partners to conduct trainings and increase awareness," which included "multiple trainings for the hotel industry."[1]

27. Defendant(s) knew or should have known that the Georgia legislature passed O.C.G.A. § 16-5-47 in 2013, which required hotels to post sex trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees where similar notices are customarily posted."

[1] *See* https://law.georgia.gov/press-releases/2013-03-18/attorney-general-olens-law enforcement-announce-campaign-fight-sex (last visited Feb. 11, 2022).

28. Defendant(s) knew or should have known that as early as 2001, City of Atlanta officials publicly warned of sex trafficking at area hotels and of the relationship between prostitution and sex trafficking. At that time, the Atlanta Journal-Constitution published a groundbreaking series called *Selling Atlanta's Children*, explaining the problem of sex trafficking in metro-Atlanta and that hotels are complicit in sex trafficking trade.[2]

29. Defendant(s) knew or should have known that the Atlanta metro-area well-publicized reputation as an "epicenter for human trafficking, and particularly child sex trafficking," and as "the number one city for child sex trafficking." [3]

30. Defendant(s) knew or should have known that in 2007, the Atlanta metro-area's sex trafficking economy was worth almost $300 million annually with traffickers reporting average *weekly* earnings of roughly $33,000.[4]

31. Defendant(s) knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child Protection Code of

---

[2] Jane O. Hansen, Selling Atlanta's Children: Runaway Girls Lured into the Sex Trade are being Jailed for Crimes while their Adult Pimps go Free, The Atlanta Journal-Constitution, Jan. 7, 2001; Jane O. Hansen, The Pimps: Prostitution's Middle Man Slides by in Court, The Atlanta Journal-Constitution, Jan. 7, 2001; Jane O. Hansen, Feds, Police Elsewhere Finding Solutions, The Atlanta Journal-Constitution, Jan. 8, 2001 ("Atlanta City Councilman Derrick Boazman said it's also time to crack down on hotels where adult men take children. 'We need to go after these hotel owners who should know what's happening when someone walks in with a 13-year-old girl,' Boazman said."); Jane O. Hansen, When Danger is as Close as a Phone, The Atlanta Journal-Constitution, Jan. 9, 2001; Jane O. Hansen, Police Plan Child Prostitution Unit, The Atlanta Journal-Constitution, April 28, 2001.

[3] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, Jan. 29, 2015, *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited Feb. 09, 2022).

[4] Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) available at https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM.

Conduct (the "Code") which outlines well-established best practices for the hospitality industry to combat sex trafficking, and identifies six simple steps hotels can take to prevent child sex trafficking, such as:

a. establishing corporate policies and procedures against sexual exploitation of children;

b. training employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c. including a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d. providing information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e. supporting, collaborating, and engaging stakeholders in the prevention of sexual exploitation of children; and

f. reporting annually on the company's implementation of Code-related activities.[5]

32. Defendant(s) knew or should have known that, compared to other types of businesses,[6] hotels play a critical role in sex trafficking ventures and serve "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and

[5] *See* ECPAT-USA, *The Tourism Child-Protection Code of Conduct*, *available at* www.ecpatusa.org/code/ (last visited Feb. 11, 2022).

[6] *Cf. Sun Tr. Banks, Inc. v. Killebrew*, 266 Ga. 109, 111 (1995) (Sears, J., concurring) ("[T]he banking industry itself anticipates that criminal activity will frequently occur at ATMs."); *Killebrew v. Sun Trust Banks*, 221 Ga. App. 679, 680-81 (1996) (physical precedent only) ("it would be difficult to say that a criminal occurrence at an ATM is unforeseeable as a matter of law. Indeed, such a conclusion could be reached only by turning 'foreseeability' into a legal term of art totally divorced from its meaning in everyday usage.")

Justice Thomas).

33. Defendant(s) knew or should have known that "[t]he hospitality industry is in a Unique position to identify and report human trafficking due to its perceived anonymity… From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property… With proper training, a front desk agent or a housekeeper can notice that something is not right and respond."[7]

34. Defendant(s) knew or should have known that, without a venue, or crime scene, a sex trafficking venture ceases to exist.

35. At all relevant times, Defendant(s) knew or should have known that there was a heightened risk that sex trafficking could take place at its facility as compared to taking place at other locations because of: (i) extensive private sector / non-profit publications informing the public that motels were a hotbed of sex trafficking, (ii) extensive federal / state / local government testimony and press quotations informing the public that Jonesboro-area motels were a particular hotbed of sex trafficking, (iii) a long running expose in the premier Atlanta newspaper (the AJC) that exposed the extent of the sex trafficking problem at metro-Atlanta area motels, and (iv) the general nature of Defendant's business involving renting private rooms cheaply by the day with each room having a bed where trafficking could occur.

**COUNT 1: STATE LAW SEX TRAFFICKING CLAIMS PURSUANT TO O.C.G.A §51-1-56**

36. Plaintiff's traffickers committed the offense of trafficking Plaintiff for sexual and labor servitude because:

a. Plaintiff had sexual relations with numerous individuals at the Motel 6;

b. the individuals paid Plaintiff's traffickers to have sexual relations with

[7] *See* https://www.ecpatusa.org/hotel-training (last visited Feb. 7, 2022) (emphasis added).

Plaintiff;

c. Plaintiff was under the age of 18 for a portion of these acts; and

d. Plaintiff's traffickers provided controlled substances to Plaintiff for the purpose of coercing her to have sexual relations against her will at the Motel 6.

37. Defendants knowingly benefitted financially from Plaintiff's trafficking because

a. the trafficker rented rooms at the hotel;

b. the trafficker used the hotel WIFI network;

c. Defendants collected revenue from the room rentals and the use of the WIFI network; and

d. the victims were advertised for sex through the WIFI network and forced to have sex in the rooms.

38. Defendants participated in a venture or scheme with Plaintiff's trafficker because:

a. Plaintiff's trafficker would pay in cash for one night at a time, booking the next night's stay before check-out time;

b. Defendants directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;

d. Defendants was directly renting rooms to the same trafficker – Plaintiff's trafficker;

e. Defendants had commercial dealings with Plaintiff's trafficker and then continued to rent rooms to Plaintiff's trafficker;

f. Defendants had a continuous business relationship with Plaintiff's trafficker such that Defendants established a pattern of conduct with the trafficker;

g. After renting the room for the first night, Plaintiff's traffickers had prior commercial dealings with Defendants and then reinstated those dealings;

h. Defendants associated with Plaintiff's trafficker in an effort to force Plaintiff to serve Defendants' business objectives; and,

i. Defendants owned, operated, and maintained the hotel in question.

39. As shown above, Defendants had – at minimum – constructive knowledge that Plaintiff was being trafficked for sex at the property.

40. Defendants directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendants specific and direct knowledge of sex trafficking, including the sex trafficking that victimized Plaintiff, and other crimes at the hotel during the relevant period.

**COUNT 2: PREMISES LIABILITY LAW**

41. Defendants owed a duty to Plaintiff to exercise ordinary care in keeping the premises and approaches of the hotel safe. *See* O.C.G.A. § 51-3-1.

42. Defendants' actual and constructive knowledge of criminal activity at the hotel made the repeated raping of Plaintiff foreseeable to the Defendants.

43. Defendants knew or should have known of steps to take to prevent the hotel from being used as a venue for sex trafficking, rape, forced drug use, assault, and other crimes perpetrated on Plaintiff but negligently failed to deter the crimes or warn the Plaintiff.

44. Defendants were negligent and said negligence proximately caused Plaintiff's injuries in the following ways:

a. Negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;

b. Negligently failing to provide appropriate and effective security personnel during Plaintiff's sex trafficking at the hotel;

c. Negligently failing to properly inspect and maintain the premises;

d. Negligently failing to properly train and supervise its employees regarding sex trafficking and other sex crimes at the hotel;

e. Negligently failing to properly retain, hire, train, and supervise said employees;

f. Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

g. Negligently failing to respond to online reviews and publicly available information;

h. Negligently failing to prevent loitering, pandering, prostitution and trespassing;

i. Negligently failing to remove loiterers, panderers, prostitutes, pimps and trespassers;

j. Negligently failing to inspect, patrol, or appropriately monitor the property;

k. Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

l. Negligently failing to remediate a long history of crime at the hotel;

m. Negligently failing to warn invitees of known hazards at the property;

n. Negligently representing to invitees that the property was safe; and

o. Other negligent acts that violated Georgia common law to be proved at trial.

45. Defendants also had a duty not to aid in the creation of, and not to maintain, a continuous and regularly repeated dangerous criminal condition at the hotel.

46. Defendants were aware of the dangerous criminal condition at the hotel and negligently allowed that condition to continue.

47. Defendants maintained a dangerous criminal condition at the hotel.

48. Defendants' creation of and failure to abate a nuisance caused injury to each Plaintiff.

**COUNT 3: NUISANCE LAW**

49. Defendants also had a duty not to aid in the creation of, and not to maintain, a continuous and regularly repeated dangerous criminal condition at the hotel.

50. Defendants were aware of the dangerous criminal condition at the hotel and negligently allowed that condition to continue.

51. Defendants maintained a dangerous criminal condition at the hotel.

52. Defendants' creation of and failure to abate a nuisance caused injury to each Plaintiff.

**COUNT 4: FEDERAL LAW TVPRA CIVIL BENEFICIARY CLAIMS**

52a. The TVPRA, 18 U.S.C. § 1595(a), provides a civil cause of action to victims like J.S. against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" minor sex trafficking or forced labor sex trafficking.

52b. Defendants "knowingly benefited" from J.S.'s trafficking because:

i. Tay and his associates, J.S.'s traffickers, rented rooms at the Motel 6;

ii. Tay and his associates used Defendants' WiFi network at the Motel 6;

iii. J.S. was advertised for sex through the WiFi network and forced to have sex in the rooms; and

iv. Defendants collected revenue from the room rentals and the use of the WiFi network.

52c. Defendants took part in a common undertaking involving risk or profit with Tay and his associates, the traffickers, because:

i. Tay and his associates would pay in cash for one night at a time, booking the next night's stay before check-out time;

ii. Defendants directly rented rooms to people it knew or should have known were engaged in sex trafficking, including the trafficking of J.S.;

iii. Defendants was directly renting rooms to the same trafficker(s) – Tay and his associates;

iv. Defendants' employees knew and were friendly with Tay and his associates, including the front desk employees;

v. Defendants purposefully rented rooms to Tay and his associates that were on the backside of the property, to allow for more privacy and easier access and to make it more difficult for police to determine the illicit activity that was occurring;

vi. Defendants owned, operated, and maintained the Motel 6;

vii. Defendants and Tay and his associates were in an innkeeper and guest relationship; and

viii. Defendants and Tay and his associates worked together to "harbor" Plaintiff at the hotel.

52d. J.S.'s traffickers' undertaking with Defendants violated the TVPRA with respect to J.S. because:

i. Tay and his associates recruited J.S. to participate in commercial sex acts at the Motel 6 by, among other reasons, stating that they would take care of her and then making her work as a prostitute;

ii. Tay and his associates harbored J.S. at the Motel 6 for the purpose of J.S. participating in commercial sex acts at the property;

iii. Tay and his associates transported J.S. to the Motel 6 for the purpose of J.S. participating in commercial sex acts on the property;

iv. The commercial sex acts occurred at the Motel 6, within the hotel rooms that were rented by Tay or his associates;

v. Tay and his associates used force, threats of force, fraud, and coercion to cause J.S. to participate in commercial sex acts at the Motel 6;

vi. Tay and his associates threatened J.S. with violence and used this tactic to cause J.S. to engage in commercial sex acts at the Motel 6;

vii. Tay and his associates defrauded J.S. by falsely telling her that they would take care of her, and then by forcing her to work as a prostitute for them at the Motel 6;

viii. Tay and his associates coerced J.S. to participate in commercial sex acts at Defendants' Motel 6 and Knights Inn by threatening J.S. with physical harm if J.S. did not continue to engage in commercial sex acts at the Motel 6;

ix. Tay knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited J.S. to engage in commercial sex acts in the rooms at the Motel 6 that Tay and his associates rented from Defendants;

x. Buyers came to the Motel 6, purchased the "right" to have sex with J.S. from Tay and his associates, and then the buyers raped J.S. at the Motel 6;

xi. J.S. was a minor for at least some the time she was trafficked at the Motel 6; and

xii. other actions to be proven at trial.

52e. The venture in which Defendants participated affected interstate commerce for numerous reasons, including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of the internet to post sex advertisements, the use of the internet to communicate regarding the sex trafficking venture generally, the use of interstate highways to transport J.S. to the Motel 6, and other reasons to be proven at trial.

52f. As shown above, Defendants had – at minimum – constructive knowledge that J.S. was being trafficked for sex at the property. *See* Fed. R. Civ. P. 9(b) ("knowledge and other conditions of a person's mind may be alleged generally); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1198, 1215 (11th Cir. 2018) (same).

52g. Defendants directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendants knowledge of sex trafficking, including the sex trafficking that victimized J.S., and other crimes at the hotel during the relevant period.

**CAUSATION AND DAMAGES**

53. As a direct and proximate result of Defendants' acts and omissions Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.

54. Defendants are jointly and severally liable with Plaintiff's trafficker, and his

associates, and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to Plaintiff.

55. Defendants are liable for Plaintiff's damages in an amount to be proven at trial, including reasonable attorneys' fees.

56. Plaintiff brings each and every claim for damages permissible under the law against Defendants for injuries suffered in the incidents at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

a. Personal injuries;

b. Past, present and future pain and suffering;

c. Disability;

d. Disfigurement;

e. Mental anguish;

f. Loss of the capacity for the enjoyment of life;

g. Loss of earning capacity;

h. Diminished capacity to labor;

i. Incidental expenses;

j. Past, present and future medical expenses;

k. Permanent injuries;

l. Punitive damages;

m. Attorney's fees; and

n. Consequential damages to be proven at trial.

57. Defendants are also liable for paying Plaintiff's attorneys fees and litigation

expenses pursuant to the O.C.G.A. § 51-1-6 and under O.C.G.A. § 13-6-11 because Defendants acted in bad faith in the underlying transaction as shown herein.

58. Each of the forgoing acts and omissions constitutes an independent act of negligence on the part of the Defendants, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment against the Defendants and for the following:

1) That process and summons issue requiring Defendants to appear as provided by law to answer the allegations of the Complaint;

2) Plaintiff be awarded actual damages in amounts to be shown at trial;

3) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants;

4) Punitive damages be imposed on Defendants;

5) Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

6) Plaintiff be provided with a trial by jury; and

7) Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

This 19th day of February, 2026.

*<u>/s/ Keith N. Evra</u>*
Matthew B. Stoddard
Ga. Bar No.: 558215
Keith N. Evra
Ga. Bar No.: 810271
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
keith@legalhelpga.com

**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

I CERTIFY that I have served a true and correct copy of the foregoing upon all counsel of record through use of the U.S. Mail, the Odyssey File & Serve system, the PeachCourt File & Serve system, or another statutorily approved method of delivery properly addressed to the following persons:

**Counsel for Defendants**
C. Shane Keith, Esq.
Elliot C. Ream, Esq.
Hawkins Parnell & Young, LLP
303 Peachtree St. NE, Ste. 4000
Atlanta, GA 30308-3243
skeith@hpylaw.com
eream@hpylaw.com

This 19th day of February, 2026.

*/s/ Keith N. Evra*
Keith N. Evra, Esq.