**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| J.S.,<br>*Plaintiff*,<br>v.<br>Shree Laxmi Hotel, LLC d/b/a Motel 6; Trinity SNK Corporation f/k/a Global Management & Investment Corporation; and John Does #2-5,<br>*Defendants*. | Civil Action File No.<br>1:26-cv-01549-MLB |

# Brief in Support of Shree Laxmi Hotel, LLC's and Trinity SNK Corporation's Motion to Dismiss


**Hawkins Parnell & Young, LLP**

C. Shane Keith
Georgia Bar No. 411317
Robert S. Thompson
Georgia Bar No. 709650
*Counsel for Defendants Shree Laxmi Hotel, LLC and Trinity SNK Corporation*

303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400
skeith@hpylaw.com
rthompson@hpylaw.com

## **Facts**[1]

### I. **The Parties**

Plaintiff J.S. proceeds under her initials pursuant to a protective order issued by the state court before this case was removed. Doc. 1-8. She alleges that she was trafficked for sex at the Motel 6 in Jonesboro, Georgia between January 2018 and August 2021. (SAC ¶ 3.)

Defendant Shree Laxmi Hotel, LLC owns the Motel 6 located at 628 Southside Commercial Parkway, Jonesboro, Georgia. (SAC ¶ 1.) Defendant Trinity SNK Corporation operated and managed the property during the relevant period. (SAC ¶ 1a.)

### II. **Plaintiff's Presence and Purpose at the Motel 6**

From approximately January 1, 2018 through August 1, 2021,[2] a man identified only as "Tay" "repeatedly trafficked Plaintiff (age 17 for a

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts well-pleaded factual allegations as true but disregards legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint survives only if it pleads "sufficient factual matter that, accepted as true, states a claim to relief that is plausible on its face." *AIKG, LLC v. Cincinnati Ins. Co.*, No. 21-13506, 2022 U.S. App. LEXIS 17282, at *4 (11th Cir. June 23, 2022) (cleaned up). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. The facts stated herein are drawn from the Second Amended Complaint ("SAC") and accepted as true for purposes of this Motion only.

[2] While the SAC generally alleges trafficking "from approximately January 1, 2018 through August 1, 2021," SAC ¶ 3, the subsequent allegations fail to provide anything specific and consist of conclusory assertions that Plaintiff was sold for money. Plaintiff does not identify any specific act by time, location, or circumstances – no john, no transaction, no room, no incident on any particular date during the three-and-a-half-year period. The entire factual narrative is conclusory and undifferentiated across the full period.

portion of this time) for sex at the Motel 6." (SAC ¶ 3.) Tay "began selling Plaintiff for sex" and "kept all of the commercial sex proceeds." (SAC ¶ 15.) Plaintiff "was sold for sex repeatedly at the Motel 6 … over at least a three and half year period … for multiple days at a time and various periods of time." (SAC ¶ 16.)

Plaintiff does not allege that she rented a room, purchased any goods or services from Defendants, or had any independent business relationship with the hotel. The SAC identifies one relationship: Tay rented rooms, and Plaintiff was placed in those rooms to be sold for sex. (SAC ¶¶ 15-16, 19, 21.) "Plaintiff's trafficker took the money from the sex acts and used it to re-rent hotel rooms from Defendants, and then her trafficker again forced (through coercion, violence, and threats of violence) Plaintiff to have sex with men in exchange for money in the hotel rooms." (SAC ¶ 21.) "Buyers came to the Motel 6, purchased the 'right' to have sex with J.S. from Tay and his associates, and then the buyers raped J.S. at the Motel 6." (SAC ¶ 52d(x).)

The SAC labels Plaintiff a "guest" and "invitee" of Defendants. (SAC ¶¶ 17, 18a.) That label is the only basis offered for invitee status. The SAC alleges no lawful purpose for Plaintiff's presence, no transaction between Plaintiff and Defendants, and no benefit conferred by Plaintiff on the hotel independent of the alleged trafficking operation.

## III. The Commercial Relationship: Defendants and Tay

The SAC's allegations of Defendants' involvement reduce to a sustained commercial relationship with Tay, not with Plaintiff. Tay "would pay in cash for one night at a time, booking the next night's stay before check-out time." (SAC ¶ 38(a).) He rented "multiple rooms" repeatedly over the three-and-a-half-year period. (SAC ¶¶ 18a, 23(h).) Defendants "collected revenue from the rental of the room(s) at the Motel 6 in which Plaintiff was forced to have sex." (SAC ¶ 22.) Tay also "used the hotel WiFi network," and Defendants collected revenue from that use as well. (SAC ¶¶ 37(b)-(c).)

Beyond room rentals and WiFi revenue, the SAC alleges three additional specific acts by Defendants. First, Defendants "steered Plaintiff typically to the back and side of the property." (SAC ¶ 19.) Second, Defendants "purposefully rented rooms to Tay and his associates that were on the backside of the property, to allow for more privacy and easier access and to make it more difficult for police to determine the illicit activity that was occurring." (SAC ¶ 52c(v).) Third, "Defendants' employees knew and were friendly with Tay and his associates, including the front desk employees." (SAC ¶ 52c(iv).) The SAC alleges no specific act or statement by any identified employee, no agreement between Defendants and Tay, no coordination, no profit-sharing, and no joint planning of any kind.

## IV. Alleged "Red Flags"

The SAC alleges that Defendants' staff observed numerous "signs and symptoms of trafficking" during the relevant period.[3] (SAC ¶ 23.) It further alleges that Defendants had generalized knowledge of sex trafficking risks based on industry publications, government announcements, Georgia statutes, and Atlanta's regional reputation as a trafficking hub. (SAC ¶¶ 24-35.) The SAC does not allege any specific communication, report, complaint, or law enforcement contact directed to Defendants concerning Plaintiff specifically. All knowledge allegations are generalized to trafficking at the property or in the hospitality industry generally.

## Argument

## I. Plaintiff's Negligence Claim Fails as a Matter of Law.

### *A. The Lawful-Purpose Requirement Has Governed Invitee Status in Georgia for Nearly 140 Years, and the SAC's Well-Pleaded Facts Negate It.*

The duty Plaintiff invokes under O.C.G.A. § 51-3-1 does not run to every person physically present on a defendant's property. It runs only to

[3] The SAC alleges that staff observed: malnourishment, poor hygiene, fatigue, sleep deprivation, bruising, cuts, and other physical injuries; lack of freedom of movement and constant monitoring by an older man; no control over or possession of money; constant and excessive requests for towels and sheets; prohibition of some staff from entering rooms; large numbers of used condoms; a constant stream of male visitors entering one at a time, staying briefly, and leaving; and other sex workers, trafficking victims, pimps, and purchasers of sex wandering the property. (SAC ¶¶ 23(a)-(k).) These allegations are materially indistinguishable from those the Eleventh Circuit held insufficient in *K.H. v. Riti, Inc.*, 2024 U.S. App. LEXIS 3127, *3 n.3 (11th Cir. Feb. 9, 2024).

invitees, defined since 1887 as persons induced onto premises for a lawful purpose. That requirement has never been removed, qualified, or read out of the statute.

In 1887, the Supreme Court of Georgia announced the governing "rule": when an owner or occupier of land induces or leads others to come upon his premises ***for any lawful purpose***, he is liable for injuries caused by the unsafe condition of the land or its approaches. *Atlanta Cotton Seed Oil-Mills v. Coffey*, 80 Ga. 145, 148 (1887) (emphasis added). That formulation became the statute. As codified in the Civil Code of 1895, mirrored in the Civil Code of 1910, and carried forward through every recodification since, O.C.G.A. § 51-3-1 preserves "for any lawful purpose" as the statutory predicate for the duty. *See Smith v. Jewell Cotton Mill Co.*, 29 Ga. App. 461, 462 (1923) (Civil Code (1910), § 4420); *Higginbotham v. Winborn*, 135 Ga. App. 753, 754-55 (1975) (§ 105-401 of the Code of 1933). The lawful-purpose requirement is not surplusage; it is a condition that separates an invitee from a licensee or trespasser.[4]

Applied here, invitee status depends on whether the injured person had present business relations with the owner that rendered her presence

[4] The statutory interpretation canon against surplusage requires that every word in a statute be given effect. *See William L. Bonnell Company, Inc. v. Coweta County Bd. of Tax Assessors*, 252 Ga. App. 151, 152 (2001) ("All words of a statute should be given effect, and a statute should not be construed so as to render any language meaningless or mere surplusage.") (citations omitted). The consistently retained phrase "for any lawful purpose" must mean something. The only coherent reading is that it limits the class of persons to whom the duty runs to those present for a lawful purpose and excludes those who are not. Any other reading renders the phrase surplusage.

of mutual, lawful benefit to both. *Radheshvar, LLC v. Larios*, __ Ga. App. __, 2026 Ga. App. LEXIS 76, at *4 (Ga. Ct. App. Feb. 10, 2026) ("The visitor is an invitee if the enterprise is mutual, each ***lawfully*** interested therein or there being a common interest or mutual advantage involved.") (emphasis added); *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 174, 180 (2021); *Higginbotham*, 135 Ga. App. at 754-55. Physical presence alone is not enough, and neither is the fact that someone else paid for access to the premises. *McGarity v. Hart Elec. Mbrshp. Corp.*, 307 Ga. App. 739, 742 (2011). Whether that requirement is met is a question of law for the court. *Rome v. Jordan*, 263 Ga. 26, 27 (1993) (explaining that the existence of a legal duty is the threshold question in any negligence action, and whether a duty exists is a question of law).

Turning to the SAC, Plaintiff's allegation that she "was a guest and invitee" of Defendants is a legal conclusion. Under *Iqbal*, the Court disregards it and looks to the well-pleaded facts, 556 U.S. at 678, which tell a single, unambiguous story: Tay put Plaintiff at the hotel to be sold for sex. She had no transaction with Defendants. She rented no room, purchased no goods or services, and had no independent relationship with the hotel. (SAC ¶¶ 15, 19, 21.) Her presence was entirely a function of Tay's criminal enterprise. No lawful purpose is alleged in the complaint because there was none.[5]

[5] Because they are "merely legal conclusions," Plaintiff's allegations that she was a "guest" and "invitee" of the hotel are due no consideration in this analysis. *See ADA v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (explaining that the court must

This Court applied this exact analysis in *G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1252-54 (N.D. Ga. 2024). The *G.W.* plaintiff did not merely allege purchases; she actually made them. The record showed that she and her companion "purchased condoms, food, drinks and hygiene supplies from the front office" during the trafficking period. *Id.* at 1246. The Court rejected that argument squarely: "it is quite a stretch to argue that United invited or induced Plaintiff to visit its Hotel or that the purpose of Plaintiff's visit to United's property was lawful. Accepting that Plaintiff was coerced to stay at the Hotel does not change the reality that commercial sex was her purpose for being there." *Id.* at 1253. Lobby purchases during an unlawful visit did not transform the nature of that visit. *Id.* The Court concluded that the plaintiff was not an invitee and was merely a licensee; because she had not argued willful or wanton conduct, the hotel was entitled to judgment as a matter of law. *Id.* at 1253-54.

The argument for invitee status was stronger in *G.W.* than it is here in every measurable respect: actual evidence of purchases, a full factual record, and a standard requiring the court to view all evidence in the plaintiff's favor. Plaintiff here presents none of that. If actual evidence of lobby purchases at summary judgment was insufficient in *G.W.* to

---

eliminate "merely legal conclusions" not supported by well-pled factual allegations in a Rule 12(b)(6) analysis).

establish the lawful purpose required for invitee status, a conclusory label in a complaint is insufficient here.[6]

### *B. Independently, Status Must Be Assessed at the Time of Injury, and at That Moment Plaintiff Was Not an Invitee.*

Georgia law does not assess invitee status in the abstract. The inquiry is temporal and conduct-specific: the court must determine whether the injured person, at the time of the injury, had present business relations with the owner that rendered her presence of mutual benefit to both. *Armstrong v. Sundance Entm't*, 179 Ga. App. 635, 635-36 (1986) ("To determine whether a person is an invitee or a mere licensee, the nature of his relation or contact with the owner or occupier of the premises must be determined … *at the time of the injury*….") (citation and punctuation omitted; emphasis in original); *Manners v. 5 Star Lodge & Stables, LLC*, 347 Ga. App. 738, 740 (2018) ("The elements of legal liability of the owner of premises for injuries occasioned to persons thereon vary according to whether the person injured was, *at the time of the injury*, a trespasser, a

---

[6] Plaintiff may invoke *Radheshvar,* 2026 Ga. App. LEXIS 76, a recent case in which the Court of Appeals found a material fact issue as to the invitee status of a motel guest's visiting cousin who was attacked in a common area. *Radheshvar* does not help Plaintiff and, properly read, supports Defendants. The court declined to resolve invitee status as a matter of law because the record contained conflicting evidence about whether a paying customer's lawful social visit conferred mutual benefit.

Here there is no dispute to resolve. The SAC tells one story: she was at the hotel to be sold for sex. That story forecloses the lawful-purpose element on its face. Critically, the Court of Appeals in *Radheshvar* repeated the phrase "lawful purpose" twice in defining what an invitee is. 2026 Ga. App. LEXIS 76, at *3, *4. That repetition confirms that the lawful-purpose requirement is the threshold inquiry—one the court in *Radheshvar* had no occasion to apply because no one questioned it, but that this Court must apply because the SAC's own allegations negate it.

licensee, an invitee express or implied, or a person standing in some special relation recognized by law.") (emphasis in original).

Status is not fixed at check-in and carried forward indefinitely. It depends on what the person was doing when she was harmed. *See Lenny's No. Two v. Echols*, 192 Ga. App. 371, 373 (1989) ("[O]ne can have the status of a business invitee originally, but because of changed circumstances the status may change to that of a licensee, or even a trespasser.") (citation omitted).

The SAC is unambiguous about what Plaintiff was doing when she was harmed. Buyers came to the hotel, purchased the right to have sex with her, and raped her in the rented rooms. (SAC § 52d(x).) Those acts were not lawful. They were not part of any business relationship between Plaintiff and Defendants. Plaintiff did not transact with the hotel at any point and conferred no lawful benefit on anyone at the time of injury. The commercial exchange the SAC describes was between Tay and the buyers, not between Plaintiff and Defendants.

Even assuming *arguendo* that Plaintiff could claim some derivative status at the moment Tay checked in, that status could not extend to conduct falling entirely outside the scope of any lawful invitation. An invitee who exceeds the scope of the invitation loses that status. *See Shaw v. McDonald's Rests. of Ga.*, 191 Ga. App. 583, 584 (1989) ("[B]ecause appellant's fall occurred in an area which the jury would have been authorized to conclude was off limits to patrons of the restaurant, the

evidence supported a conclusion that appellant had exceeded the scope of her invitation, thus transforming her status from invitee to licensee.") *Bronesky v. Estech, Inc.*, 170 Ga. App. 724, 724-25 (1984) ("[A]n invitee who leaves such places for others on the premises not included in the invitation and disconnected with the objects of the invitation is, as to such parts of the premises, a mere licensee."). Illegal commercial sex acts fall outside any conceivable scope of a lawful room-rental invitation. Assessed at the moment that matters, Plaintiff was not an invitee.

### *C. Absent Invitee Status, the SAC Pleads No Willful or Wanton Conduct, and the Claim Fails Entirely.*

If Plaintiff is not an invitee, she is at best a licensee or trespasser. A landowner owes a licensee only the duty to refrain from willful or wanton injury. O.C.G.A. § 51-3-2(b). A landowner owes a trespasser no greater duty. O.C.G.A. § 51-3-3. Willful conduct requires actual intent to harm. Wanton conduct requires recklessness so extreme it is equivalent in spirit to actual intent; mere negligence does not suffice. *Ohl v. CSX Transp., Inc.*, 625 F. Supp. 3d 1319, 1328-29 (N.D. Ga. 2022).

The SAC contains no allegation of willful or wanton conduct—not a factual one, not even a conclusory one. Every theory of liability pleaded in Count 2 sounds in ordinary negligence: repeated failures to act, failures to train, failures to warn, failures to remediate. (SAC ¶ 44(a)-(o).) Because Plaintiff has not alleged, and cannot allege on these facts, that Defendants acted with actual intent to harm her or with reckless

indifference equivalent to that intent, the negligence claim fails entirely regardless of which sub-invitee status the court assigns.

## II. Plaintiff's State Law Sex Trafficking Claim is Barred by Georgia's Nonretroactivity Rule.

Georgia's civil sex trafficking statute, O.C.G.A. § 51-1-56, became effective July 1, 2021. Under Georgia's governing rule, statutes are presumed to operate prospectively unless the General Assembly clearly indicates otherwise. The critical distinction is between procedural and substantive enactments: procedural statutes may apply retroactively, substantive ones may not. A statute is substantive if it creates new rights, imposes new obligations, or changes existing law. *Doe (K.B.) v. G6 Hosp., LLC*, 2023 U.S. Dist. LEXIS 222360, at *37 (N.D. Ga. Dec. 14, 2023).

O.C.G.A. § 51-1-56 is substantive. It creates a new cause of action and imposes new liabilities where none previously existed. *Id*. This Court resolved this precise issue in *K.B.* and dismissed all claims under § 51-1-56 based on conduct occurring before the statute's July 1, 2021 effective date. *Id.*[7] Because the statute is substantive and the legislature expressed no retroactive intent, the same result is required here.[8]

---

[7] The Court's analysis in *K.B.* is detailed and instructive. The Court considered and rejected each competing argument advanced in favor of retroactive application, including that the statute's ten-year limitations provision evidenced legislative intent to reach pre-effective-date conduct, and that the existence of a parallel federal statute eliminated the presumption against retroactivity of the new state cause of action. *Doe (K.B.)*, 2023 U.S. Dist. LEXIS 222360, at *37.

[8] One month of Plaintiff's alleged trafficking period post-dates the effective date of O.C.G.A. § 51-1-56. But the SAC is devoid of any specific allegations related to that window. Instead, Plaintiff offers wholly conclusory allegations of being sold for money

More than three and a half years of Plaintiff's alleged trafficking period predates the statute's July 1, 2021 effective date, leaving at most one month—July 1 to August 1, 2021—within the statute's reach. Because O.C.G.A. § 51-1-56 has no retroactive application, the entirety of the pre-effective-date conduct is legally irrelevant to this state law claim and is not redressable under that statute.[9]

## III. <u>Plaintiff's Federal TVPRA Beneficiary Claim Fails as a Matter of Law.</u>

### *A. The SAC Does Not Plausibly Allege Participation in a Venture.*

To state a civil beneficiary claim under the TVPRA, a plaintiff must plausibly allege that the defendant knowingly benefited from participation in a venture that violated the statute as to the plaintiff. *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). The primary dispute here is whether Plaintiff has plausibly alleged that Defendants participated in a venture within the meaning of § 1595. She has not.

In *Red Roof* and *Riti*, the Eleventh Circuit made clear that "participation in a venture" requires more than parallel conduct or passive involvement. *Red Roof*, 21 F.4th at 726-27; *Riti*, 2024 U.S. App.

---

across an undifferentiated three-and-a-half-year period. For the post-effective-date period, Plaintiff must plead non-conclusory facts showing force, fraud, or coercion directed at her specifically during that one-month window. She has not. The one-month tail does not save the claim. *See Doe (S.J.C.) v. ESA P Portfolio LLC*, 2024 U.S. Dist. LEXIS 207479, at *8 (N.D. Ga. Nov. 15, 2024).

[9] At a minimum, this claim must be confined strictly to the July 1 through August 1, 2021 period. But for the reasons stated in Section III, even those remaining claims should be dismissed for failure to plausibly plead the elements of the underlying § 1591 violation.

LEXIS 3127, at *7-8. A defendant must take part in a common undertaking with the trafficker — something shared, not merely observed. *Red Roof,* 21 F.4th at 726 ("So we must determine whether the Does plausibly alleged that the franchisors took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers."). The alleged venture must be the one that violated the TVPRA as to the plaintiff, and the defendant must be alleged to have participated in that venture, not simply in a general commercial enterprise. *See A.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-05231-JPB, slip op. at 13 (N.D. Ga. June 14, 2024) ("Plaintiff must demonstrate that [the hotel] acted pursuant to the common goal of the trafficking venture.").

The standard is demanding. The defendant must have "an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction." *Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-0915-B, 2024 U.S. Dist. LEXIS 55995, at *37 (N.D. Tex. Mar. 28, 2024) (synthesizing *Red Roof* with *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023)).[10]

[10] Plaintiff's own pleading signals the deficiency. The SAC alleges that "Defendants have *recklessly tolerated* and *sometimes participated* in sex trafficking ventures at the Motel 6 for years, including the trafficking of Plaintiff." (SAC ¶ 2 (emphasis added).) Toleration is the primary theory; participation is the afterthought. A defendant that recklessly tolerated trafficking – that is, one that looked away from conditions it had no duty to investigate – has not elected to further the ends of a specific venture beyond what an ordinary commercial transaction requires. That is the opposite of the standard the TVPRA demands. *See A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641-JES-NPM,

Measured against that standard, the SAC's allegations reduce to four categories: a sustained commercial room-rental relationship between Defendants and Tay, generalized red flags observable at the property, routine commercial amenities available to all guests, and three specific allegations presented as evidence of something more. None suffices.

The commercial relationship -- Tay rented rooms, paid cash, booked one night at a time, and returned repeatedly over three and a half years -- is precisely the pattern the Eleventh Circuit addressed and rejected in *Riti*. The plaintiff there alleged a four-year rental relationship with observable trafficking indicators throughout. The Eleventh Circuit held that those allegations "amount[ed] to contentions that [the hotel operator] financially benefitted from renting hotel rooms to [the] trafficker and that [the operator] observed signs of sex trafficking at the hotel" and that this was insufficient. *Riti*, 2024 U.S. App. LEXIS 3127, at *10. Observing something is not the same as participating in it. *Id.* (quoting *Red Roof*, 21 F.4th at 726). The red flags alleged here are materially identical to those rejected in *Riti* and are equally insufficient.[11]

The SAC also alleges that Tay used the hotel's WiFi network and that Defendants collected revenue from that use. (SAC ¶¶ 37(b)-(c).) This

---

2023 U.S. Dist. LEXIS 68590, at *9 (M.D. Fla. Apr. 19, 2023) ("The TVPRA does not impose an affirmative duty to police and prevent sex trafficking.") (alterations accepted, citation omitted).

[11] *See supra* note 3 for the full list of alleged indicators. These allegations are materially indistinguishable from those the Eleventh Circuit held insufficient in *Riti*. 2024 U.S. App. LEXIS 3127, at *3 n.3.

too fails to advance the venture argument. WiFi is a standard commercial amenity offered to every guest without differentiation. The SAC does not allege that Defendants provided WiFi to Tay on terms different from any other paying guest, that Defendants knew the WiFi was being used to advertise Plaintiff for sex, or that Defendants took any action in connection with Tay's use of the network. That a trafficker may have exploited a universally available commercial service for criminal purposes does not transform the hotel's provision of that service into participation in the trafficking venture. If anything, the WiFi allegation illustrates the fundamental problem with the SAC as a whole: every specific act attributed to Defendants -- renting rooms, collecting payment, providing towels, offering WiFi -- describes conduct that would occur in any ordinary commercial lodging relationship with any paying guest. None of it reflects an ongoing interest in the success of Tay's specific venture.[12]

---

[12] Similarly, the SAC's remaining transactional allegations fare no better. Cash payment for a single night's lodging at an economy motel is unremarkable. Booking the following night before checkout describes ordinary short-stay behavior, not coordination with a trafficking venture. Requests for additional towels and linens are a routine housekeeping interaction. Each of these describes conduct occurring daily in lawful commercial transactions between hotels and their paying guests. None supports a plausible inference that Defendants crossed from ordinary lodging provider into participant in a sex trafficking venture. *See Riti*, 2024 U.S. App. LEXIS 3127, at *10-11 (dismissing complaint because plaintiff "failed to plausibly allege that [the hotel] participated in a common sex trafficking undertaking or enterprise with [the trafficker].").

The SAC's three purportedly distinctive allegations do not change the analysis. First, the SAC alleges that Defendants' employees "knew and were friendly with Tay and his associates, including the front desk employees." (SAC ¶ 52c(iv).) "Friendly" is a characterization without factual content. The SAC does not identify a single employee by name, describe a single interaction, or allege any agreement, coordination, profit-sharing, or joint planning. A label unsupported by facts is a conclusory allegation that the Court disregards under *Iqbal*. *See Doe (S.J.C.) v. ESA P Portfolio LLC*, 2024 U.S. Dist. LEXIS 207479, at *8 (N.D. Ga. Nov. 15, 2024) ("Plaintiff's entire Complaint is replete with conclusory allegations."); *Iqbal*, 556 U.S. at 678 (holding that a complaint that merely tenders "naked assertions devoid of further factual enhancement" does not "suffice") (cleaned up).

Second, the SAC alleges that Defendants "purposefully rented rooms to Tay and his associates that were on the backside of the property, to allow for more privacy and easier access and to make it more difficult for police to determine the illicit activity that was occurring." (SAC ¶ 52c(v).) This is a bare allegation of purpose with no factual predicate. The SAC does not allege who made the decision to assign backside rooms, when, or based on what communication with Tay. Accommodating a guest's preference for a private, out-of-the-way room is ordinary commercial conduct -- an offer extended by every hotel that advertises quiet or accessible accommodations. Nothing in the SAC distinguishes a

backside-room assignment from routine hospitality. Pleading purpose without facts that make that purpose plausible is precisely what *Iqbal* prohibits.

Third, the SAC repeatedly emphasizes that Tay rented "multiple rooms" over the trafficking period. (SAC ¶¶ 18a, 19, 23(h).) *Riti* involved the same pattern: repeated rooms, cash payments, multi-year dealings. The Eleventh Circuit held it insufficient. Describing that pattern as "multiple rooms" rather than "repeated rentals" is a semantic choice that changes nothing. If the *Riti* pattern did not constitute participation, this one does not either.[13]

The SAC alleges nothing that crosses the line the Eleventh Circuit has drawn between observation and participation. Renting rooms, collecting payment, offering WiFi, and being "friendly" with a repeat customer describe every commercial lodging relationship with every paying guest. The SAC does not allege a single act by any identified

[13] Plaintiff may argue that Tay's repeated room rentals over three and a half years establish a "continuous business relationship" sufficient to show participation. The Eleventh Circuit has never adopted that theory. *A.G.*, slip op. at 15 n.4 (N.D. Ga. June 14, 2024) ("the Eleventh Circuit has not adopted that reasoning" and "a continuous business relationship … is not the keystone of the Eleventh Circuit's participation test"). That conclusion is confirmed by *Riti* itself. This Court in *Riti* cited the continuous-business-relationship theory approvingly. *See K.H. v. Riti, Inc.*, No. 1:22-CV-3404-MHC, 2023 U.S. Dist. LEXIS 93374, at *11-12 (N.D. Ga. Apr. 17, 2023). Yet the Eleventh Circuit affirmed dismissal without adopting or acknowledging that reasoning, holding only that allegations of financial benefit from room rentals combined with observed signs of trafficking were insufficient. *Riti*, 2024 U.S. App. LEXIS 3127, at *10 (citing *Red Roof*, 21 F.4th at 726). The Eleventh Circuit's silence on the theory when it had every opportunity to endorse it is not incidental. This Court should apply the standard the Eleventh Circuit has actually articulated.

Defendant employee directed at advancing Tay's specific enterprise: no agreement, no coordination, no assistance, no shared objective. What the SAC describes is a hotel that rented rooms to a trafficker. That is not participation in a venture. It is the conduct the Eleventh Circuit has repeatedly and expressly held insufficient.[14]

### B. *The SAC Fails to Plausibly Allege a § 1591 Violation During Plaintiff's Adult Years.*

The TVPRA's civil remedy requires that the underlying venture violated § 1591 as to the plaintiff. *Red Roof*, 21 F.4th at 726. The elements of that predicate violation depend on the victim's age. For a minor, causing the victim to engage in a commercial sex act is itself a crime – no force, fraud, or coercion need be alleged. 18 U.S.C. § 1591(a); *G.W. v. Northbrook Indus., Inc.*, 2022 U.S. Dist. LEXIS 93263, at *9 (N.D. Ga. 2022). For an adult, the statute is more demanding: the offense must be "effected by means of force, threats of force, fraud, or coercion." 18 U.S.C. § 1591(b)(1). An allegation that an adult was sold for sex, standing alone,

---

[14] There are no reported decisions addressing the elements of a claim under O.C.G.A. § 51-1-56. As one commentator has observed, however, the statute "mirrors the TVPA's provision so that an identical statute can apply in state courts for actors who would not be subject to federal jurisdiction." *SB 33: Civil Cause of Action Against Human Traffickers*, 38 Ga. St. U.L. Rev. 241, 243 (Fall 2021). Where the text of a federal statute has been copied into a Georgia statute, federal court decisions construing that text are "strongly persuasive" on Georgia courts. *Superior Pine Prods. Co. v. Williams*, 214 Ga. 485, 491 (1958); *Abrams v. Laughlin*, 304 Ga. 34, 37 (2018). Accordingly, a pleading that fails to state a claim under the TVPRA should likewise fail under O.C.G.A. § 51-1-56, and the state-law trafficking claim should be dismissed on that independent basis as well.

does not establish a § 1591 violation. *Doe (S.J.C.)*, 2024 U.S. Dist. LEXIS 207479, at *8-9.

The SAC alleges a trafficking period from January 1, 2018 through August 1, 2021 -- three and a half years. (SAC ¶ 16.) Plaintiff was seventeen years old when she was introduced to Tay in 2017. (SAC ¶ 14.) She turned eighteen at some point in 2018, meaning the substantial majority of the alleged trafficking period—well over two and a half years—occurred while Plaintiff was an adult.[15] For that period, Plaintiff must plausibly allege, with non-conclusory factual support, that force, fraud, or coercion was used to cause her to engage in commercial sex acts.

She has not done so. The SAC contains two references bearing on this element. First, Plaintiff alleges that she "was sold for sex repeatedly at the Motel 6." SAC ¶ 16. Second, Paragraph 36(d) alleges that "Plaintiff's traffickers provided controlled substances to Plaintiff for the purpose of coercing her to have sexual relations against her will." Neither allegation is sufficient under *Doe (S.J.C.)*.

In *Doe (S.J.C.)*, this Court dismissed an adult plaintiff's TVPRA claim where the complaint alleged she was "trafficked through force and coercion" and was "harbored, transported, or provided for the purpose of

[15] Plaintiff alleges she was seventeen in 2017 when she met Tay, and that the trafficking period began January 1, 2018. Even assuming she did not turn eighteen until late 2018, she was an adult for at least two and a half of the three-and-a-half years alleged. (*See* SAC ¶ 16 (alleging that she was trafficked "both as a minor and after she turned 18 years old").)

causing her, through force, fraud, or coercion, to commit a commercial sex act." *Doe (S.J.C.)*, 2024 U.S. Dist. LEXIS 207479, at *8. The Court held those allegations were "simply the statutory language that defines sex trafficking" and therefore "impermissible conclusory allegation[s] that need not be considered." *Id.* What was missing, the Court explained, were "non-conclusory allegations or facts that show how she was forced or how she was coerced to engage in commercial sex acts" -- for example, that she was physically assaulted, threatened, or restrained. *Id.* at *8-9.

The SAC here fares no better. The allegation that Plaintiff was "sold for sex" describes the commercial structure of the arrangement; it says nothing about force, fraud, or coercion. The controlled-substance allegation in Paragraph 36(d) recites the statutory element without supporting facts: no substance identified, no instance described, no timing alleged, and no connection drawn to any specific act during the adult period. Under *Doe (S.J.C.)* and *Iqbal*, that is a legal conclusion dressed as a fact, and it cannot sustain the claim.

Plaintiff's minor-period allegations are sufficient to satisfy the third element for that limited window. *See J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1238 (N.D. Ga. 2022). But the TVPRA claim cannot stand for the adult period on the SAC as drafted, and that failure eliminates the

preponderance of the alleged trafficking period from federal civil liability.[16]

### *C. The SAC Does Not Plausibly Allege Knowledge as to This Plaintiff.*

Even if Plaintiff had plausibly alleged participation in a venture and a predicate § 1591 violation, the claim independently fails on the fourth element. The Eleventh Circuit requires that a defendant have constructive or actual knowledge that the undertaking violated the TVPRA as to the plaintiff. *Red Roof*, 21 F.4th at 726. That phrase is operative, not ornamental: "[i]n short, ***we hold*** that, to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant … had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA ***as to the plaintiff***." *Id.* (emphasis added).

---

[16] Although Plaintiff may have pleaded facts sufficient to satisfy the third *Red Roof* element—violation the TVPRA as to the plaintiff—for the limited period during which she was a minor, that portion of the claim fails independently because the SAC does not plausibly allege that Defendants participated in a venture with her trafficker or that Defendants had constructive or actual knowledge that any such venture violated the TVPRA as to her specifically, for the reasons set forth in Sections III.A and III.C.

This pleading failure carries independent consequences for the state-law claim. The Georgia trafficking statute did not become effective until July 1, 2021. By that date, Plaintiff had been an adult for years. The SAC identifies no specific act within the July 1 through August 1, 2021 window, and certainly none supported by non-conclusory allegations of force, fraud, or coercion. The adult-pleading deficiency under *Doe (S.J.C.)* thus reinforces and compounds the retroactivity argument: even if the state claim survived on retroactivity grounds for that final month, the SAC does not plead a viable adult trafficking claim for that period either.

By requiring plaintiff-specific knowledge, the Eleventh Circuit foreclosed the theory that general awareness of trafficking at a hotel, or in the industry, can substitute for facts connecting the defendant's knowledge to this plaintiff's trafficking. *Id.* at 727; *Riti*, 2024 U.S. App. LEXIS 3127, at *7.

The SAC does not satisfy that standard. The knowledge allegations fall into two categories, and neither is sufficient.

First, the SAC alleges awareness of general trafficking conditions at the property: a "known hotbed" of prostitution, online reviews, a history of crime, and visible red flags observable across the hotel. These are industry-level and property-level allegations. They are exactly what the Eleventh Circuit held insufficient in *Red Roof*, where plaintiffs alleged that franchisors "sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels." 21 F.4th at 727. The Court called those the plaintiff's "only allegations as to the franchisors' knowledge" and found them inadequate. *Id.* The same result follows here.

Second, the SAC alleges visible indicators associated with Plaintiff specifically: injuries, malnourishment, restricted movement, excessive requests for towels and linens, and a stream of male visitors. But these are observations attributed to staff generally, not to any identified person or incident linked to this Plaintiff. The SAC does not allege that any Defendant employee recognized Plaintiff, took note of her condition,

reported a specific concern about her, or made any decision bearing on her trafficking in particular. Generalized property conditions, even if particularized by room number or timeframe, are not plaintiff-specific knowledge. *Doe K.B.*, 2023 U.S. Dist. LEXIS 222360, at *18-19 (N.D. Ga. 2023) (rejecting allegations that illegal activity "was done in plain view" as "clearly too general to infer knowledge of [plaintiff's] trafficking").

The inadequacy of generalized red-flag evidence to satisfy the plaintiff-specific knowledge requirement is illustrated by *C.B. v. Naseeb Investments, Inc.*, 748 F. Supp. 3d 1338 (N.D. Ga. 2024). There, on a fully developed summary judgment record, the plaintiff presented evidence that the trafficker had rented an adjoining room, that a hotel employee had called her room to ask if she was okay, that a housekeeper had observed her with a buyer, and that police had responded to the trafficker's room twice on the day of the trafficking. *Id.* at 1361-62. The court nonetheless granted summary judgment, finding that none of that evidence, individually or collectively, established that the hotel knew or should have known that this plaintiff was being trafficked. *Id.* at 1362. The court further observed that, after *Riti*, it could not envision a viable constructive-knowledge theory absent "some form of evidence of a defendant's actual knowledge of a plaintiff's presence on the property,

plus some overt act" such as employees serving as lookouts. *Id.* at 1362-63.[17]

If a full evidentiary record containing police visits, a wellness call, and direct employee observation of the plaintiff could not satisfy the "as to the plaintiff" standard at summary judgment, the generalized red-flag allegations in this SAC -- none of which tie any Defendant employee to any awareness of J.S. specifically -- cannot plausibly do so at the pleading stage.

Moreover, the TVPRA does not impose an affirmative duty to investigate guests or police trafficking on hotel premises. *Red Roof*, 21 F.4th at 727 ("[O]bserving something is not the same as participating in it."); *Taylor v. CPLG FL Props., LLC*, 2024 U.S. Dist. LEXIS 209638, at *13 (M.D. Fla. 2024) (rejecting liability based on failure to implement anti-trafficking policies or intervene). A defendant that has no duty to investigate cannot acquire plaintiff-specific knowledge through its failure to do so. The SAC asks this Court to infer that Defendants should have known of J.S.'s trafficking from ambient conditions they had no obligation to investigate. That theory collapses the distinction between

[17] Defendants do not urge that formulation as the governing standard. The observation is instructive, however, for what it confirms: the "as to the plaintiff" requirement demands something more than ambient awareness of trafficking conditions at the property. General red-flag allegations – excessive towel requests, cash payments, and male visitors – describe the background environment. They do not connect any Defendant employee to knowledge of J.S. specifically. That connection is what the element requires.

general awareness and plaintiff-specific knowledge that *Red Roof* and *Riti* preserve. *See C.B.*, 748 F. Supp. 3d at 1361 (stating that *Red Roof* and *Riti* "require actual or constructive knowledge *as to the trafficking of the individual plaintiff*, plus some degree of acceptance or welcome of that trafficking.") (emphasis in original). The TVPRA claim fails on this independent ground.

**Conclusion**

Defendants respectfully request that the Court grant this Motion and dismiss Counts 1, 2, and 4 of the Second Amended Complaint.

Respectfully submitted, this 30th day of March 2026.

**Hawkins Parnell & Young, LLP**

*/s/ C. Shane Keith*
C. Shane Keith
Georgia Bar No. 411317
Robert S. Thompson
Georgia Bar No. 709650
*Counsel for Defendants Shree Laxmi Hotel, LLC and Trinity SNK Corporation*

303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400
skeith@hpylaw.com
rthompson@hpylaw.com

**Certificate of Compliance**

Pursuant to Local Rules 5.1(C) and 7.1(D), N.D. Ga., the undersigned counsel certifies that the foregoing Brief in Support of Defendants' Motion to Dismiss has been prepared in Book Antiqua, 13-point font.

**Hawkins Parnell & Young, LLP**

*/s/ C. Shane Keith*
C. Shane Keith
Georgia Bar No. 411317