**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION**

| | | |
|---|---|---|
| D.B., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:25-CV-05330-ELR |
| | * | |
| MNSS INVESTMENT, LLC, d/b/a Best American Inn, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

**ORDER**

Presently before the Court is the Motion to Dismiss by Defendant MNSS Investment, LLC, d/b/a Best American Inn. [Doc. 12]. For the reasons set forth below, the Court denies the Motion.

## I. Background

At a time when Plaintiff D.B. was a minor, between September 2020 and February 2021, an individual named Ashanti Coles allegedly forced Plaintiff to have sex for money over a hundred times at the Best American Inn, a hotel Defendant owned, operated, and managed. Am. Compl. ¶¶ 3, 5–6, 22–23, 30. Plaintiff alleges that Coles would use the sex sale proceeds to book a room in cash for another night at the Best American Inn. Id. ¶¶ 32–33, 40. During her stay at Defendant's hotel,

Coles beat, raped, drugged, coerced, and controlled Plaintiff. Id. ¶¶ 26–28, 41, 62, 70. Plaintiff alleges that there were numerous visible signs common to minor victims of sex trafficking associated with her stay at Defendant's hotel. For example, Plaintiff, then a 16-year-old, was accompanying an older man—the approximately 26-year-old Cole and was also seen associating with other, older men; Plaintiff wore revealing and age-inappropriate clothing; although Plaintiff appeared to be of school-age, she was not in school during the day; Plaintiff showed signs of physical injury and drug use; Coles routinely stood at or near the door of Plaintiff's hotel room; Plaintiff's room saw heavy foot traffic. Id. ¶ 62.

Plaintiff repeatedly accompanied Coles to the front desk in the hotel lobby while he rented rooms, and the hotel's night clerk was familiar enough with Coles and Plaintiff that Plaintiff greeted him each time she accompanied Coles. Am. Compl. ¶¶ 35, 57, 58. Hotel security shared cigarettes and conversed jovially with Coles while Coles was trafficking Plaintiff. Id. ¶ 61. According to Plaintiff, Defendant monitored and managed all hotel employees, giving Defendant knowledge of trafficking that occurred at the hotel. Id. ¶ 56. Indeed, Plaintiff alleges that Defendant rented rooms to Coles on the ground floor at the back of the building specifically to provide privacy and easy access for sex traffickers and to make police detection more difficult. Id. ¶¶ 36, 59, 69. Moreover, according to Plaintiff, prior to Plaintiff's trafficking, several online reviews of Defendant's hotel described

prostitution, violence and criminal activity at the hotel, and some of them even referenced that the illicit activity had been reported to hotel management. Id. ¶¶ 7, 52–55.

On September 18, 2025, Plaintiff filed her Complaint in this action against Defendant, alleging, pursuant to 18 U.S.C. § 1595(a), a violation of the Trafficking Victims Protection Reauthorization Act (TVPRA) (Count I) and claims for premises liability (Count II) and nuisance (Count III). Compl. [Doc. 1]. After Defendant moved to dismiss the Complaint, [Doc. 7], Plaintiff filed a timely Amended Complaint, [Doc. 11]. Defendant then filed its Motion to Dismiss Amended Complaint, [Doc. 12], which Plaintiff opposed, [Doc. 14]. The Parties argued the Motion before the Court at a hearing on August 5, 2026. Having been fully briefed, Defendant's Motion is ripe for the Court's review.

## II. Legal Standard

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true the allegations set forth in the complaint, drawing all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); United States v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013). Even so, a complaint offering mere "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555); Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007).

"[A] pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief" to satisfy "the pleading requirements of Rule 8." Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005) (citing Fed. R. Civ. P. 8(a)(2)). Additionally, to survive a Rule 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Put differently, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This so-called "plausibility standard is not akin to a 'probability requirement'"; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id.; Twombly, 550 U.S. at 556.

**III. Discussion**

Defendant argues that the Court should dismiss Plaintiff's Amended Complaint because Plaintiff (1) does not sufficiently state a TVPRA claim against Defendant; (2) fails to plausibly allege that her trafficking was reasonably

foreseeable or that Defendant had superior knowledge of the hazard, as required for a premises liability claim; and (3) fails to plausibly allege that Defendant's hotel represented a nuisance. [Doc. 12-1 at 1–2]. The Court addresses each argument in turn.

### A. Plaintiff Sufficiently Pleads a TVPRA Claim

Section 1595 of the TVPRA authorizes a civil action by "a victim of a violation of [the TVPRA] . . . against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA])." 18 U.S.C. § 1595(a). "[P]articipation in a venture" requires that a defendant "took part in a common undertaking or enterprise involving risk and potential profit." Doe #1 v. Red Roof Inns, 21 F.4th 714, 726 (11th Cir. 2021). Thus, to state a TVPRA claim, "a plaintiff must plausibly allege that the defendant knowingly benefited from taking part in a common undertaking or enterprise involving risk and potential profit, that the undertaking or enterprise violated the TVPRA as to the plaintiff, and that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." Id. According to Defendant, Plaintiff does not sufficiently plead a claim under the TVPRA because she does not allege facts

sufficient to demonstrate that Defendant participated in a venture that it knew or should have known was engaged in trafficking Plaintiff. [Doc. 12-1 at 3].

Defendant argues that its alleged conduct—that is, the renting of rooms, accepting cash payments, assigning ground-floor rooms, and greeting Coles and engaging in friendly conversation with him—reflects only ordinary hotel operations rather than affirmative participation in a sex trafficking venture. [Doc. 12-1 at 8]. Defendant further argues that Plaintiff fails to plausibly allege that Defendant knew or should have known that the venture violated the TVPRA as to Plaintiff. [Id.]

1. Participation in an undertaking or enterprise

To be liable under § 1595, a defendant must take part in a common enterprise to the extent that they share legal risks and potential profits with traffickers. A.G. v. Northbrook Indus. Inc., 171 F.4th 1257 (11th Cir. 2026). Thus, merely renting a hotel room to a trafficker, even with actual or constructive knowledge of the trafficking, does not constitute participation in a "venture." Id. at 1269. Rather, "something more than engaging in an ordinary buyer-seller transaction is required." Id. (cleaned up). What constitutes "something more" is a fact-specific inquiry and may include a defendant providing "personalized support" to a sex trafficker." Id.

Although it concerned summary judgment, Northbrook sheds light on what may suffice as allegations of "something more" to support a showing of the defendant's participation in a venue. There, the Eleventh Circuit concluded that two

of the plaintiffs, A.G. and G.W., had presented sufficient evidence of participation where the hotel's general awareness of trafficking was coupled with evidence that the traffickers regularly spoke with hotel staff and, on two occasions, persuaded hotel employees to readmit the plaintiffs to their rooms even though they lacked identification and were not listed on the reservations. 171 F.4th at 1271. This conduct constituted "something more" than merely renting rooms, and it permitted an inference that the hotel "supported and cooperated with" the trafficker's operation. Id. The Eleventh Circuit acknowledged that the evidence of the defendant hotel's "participation in a venture" was not overwhelming but found that "[i]t does not need to be[.]" Id. As to a third plaintiff, C.B., the Eleventh Circuit held that the defendant hotel operator had provided sufficient support where the evidence permitted an inference that the hotel applied its room-placement and cleaning policies to C.B.'s trafficker to enable the trafficking operation. Id. at 1272. Specifically, the hotel placed C.B.'s trafficker in an area where sex offenders were routinely placed, rented the trafficker an adjacent second room by the night, and complied with his room cleaning instructions. Id. The defendant hotel operator's practices as to C.B.'s trafficker constituted the requisite "something more" beyond merely renting a hotel room. Id.

Here, Plaintiff plausibly alleges comparable affirmative conduct beyond an ordinary hotel-customer relationship. Plaintiff alleges that she repeatedly

accompanied Coles to the lobby while he rented rooms with cash from the sex trafficking sales; that Plaintiff greeted the front desk clerk each time she accompanies Cole to the lobby; that hotel security staff was so familiar with Coles that they shared cigarettes and jovial conversations. Am. Compl. ¶¶ 35, 57–58, 61. Plaintiff also alleges that Defendant rented to Coles rooms on the ground floor and in the back of the hotel to aid his sex trafficking of Plaintiff. Id. ¶¶ 36, 59, 69.

Unlike in K.H. v. Riti, Inc., No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024), where the complaint alleged only that the hotel continued renting rooms, collected rental revenue, and observed signs of trafficking, Plaintiff here alleges affirmative conduct that plausibly goes beyond the passive observation and routine commercial relationship found insufficient in Riti. Plaintiff does not merely allege that Defendant rented rooms to Coles, collected revenue, or passively observed signs of trafficking. Rather, she alleges that Defendant's employees repeatedly interacted with Coles during the trafficking and that Defendant purposefully assigned him secluded rooms in a manner intended to facilitate the trafficking and reduce the likelihood of police detection. Am. Compl. ¶¶ 35–36, 57–59, 61, 69. At the pleading stage, these allegations are sufficient to plausibly allege that Defendant provided personalized support to Coles's trafficking operation and thereby participated in a venture within the meaning of § 1595.

2. Knowledge

As to § 1595's knowledge requirement, examining the statutory text, the Northbrook Court rejected the proposition that a beneficiary must know the identity of the trafficking victim and held instead that the "knowledge element requires constructive or actual knowledge that the undertaking or enterprise violated the TVPRA, nothing more." 171 F.4th at 1270. Constructive knowledge is that "knowledge which one using reasonable care or diligence should have." Id. at 1273 (quoting Red Roof, 21 F.4th at 725). And evidence of observable red flags can permit an inference of constructive knowledge. Id. at 1273. In Northbrook, such evidence included a registered sex offender's request for a room next door to one of the plaintiffs, multiple men visiting a 15-year old girl over a short period, the hotel's prior awareness of prostitution and trafficking, and an employee's eye contact with one of the sex trafficked plaintiffs. Id.

Here, Plaintiff alleges that Defendant had at least constructive knowledge that Cole was trafficking Plaintiff. Am. Compl. ¶¶ 72–73. Particularly, Plaintiff alleges that she stayed at Defendant's hotel for several months, during which time Defendant's employees had ample opportunity to observe numerous indicators that she was being trafficking: Plaintiff (a 16-year old) was routinely accompanied by 26 year old Coles; Plaintiff's age-inappropriate and revealing clothing; Plaintiff's school age appearance accompanied by her presence at the hotel during school

hours; Plaintiff's open association with much older men; Plaintiff's physical injuries and signs of her apparent drug use; Coles's presence near or at the door of Plaintiff's hotel room; and the inexplicable heavy foot traffic to and from Plaintiff's room . Am. Compl. ¶¶ 37, 62. Plaintiff also allege that online reviews that described prostitution, violence and criminal activity gave Defendant actual or constructive notice of trafficking at the hotel. Id. ¶¶ 52–55.

Taken together, these allegations plausibly allege that Defendant had constructive knowledge that the undertaking violated the TVPRA. See Northbrook, 171 F.4th at 1273–1274 (concluding that evidence of suspicious circumstances surrounding a minor victim and her trafficker permitted an inference of constructive knowledge). To the extent that Defendant offers innocent explanations for the alleged indicators of trafficking or disputes what the employees reasonably should have understood from those circumstances, such arguments concern factual disputes that are not appropriately resolved at this stage. See id. at 1273 (explaining that arguments concerning whether suspicious circumstances should have alerted hotel personnel to trafficking were "arguments for a jury to consider").

**B. Plaintiff Plausibly Alleges a Premises Liability Claim**

Defendant argues that Plaintiff fails to state a premises liability claim because she does not plausibly allege (1) that the alleged criminal conduct was reasonably foreseeable under the totality of the circumstances or (2) that Defendant possessed

superior knowledge of the hazard. [Doc. 12-1 at 8–10]. Defendant further contends that Plaintiff's allegations regarding online reviews and prior criminal activity are conclusory and insufficient as a matter of law. [Id.]. Plaintiff responds that these issues are fact-intensive and generally inappropriate for resolution on a Rule 12(b)(6) motion. [Doc. 14 at 20].

1. Foreseeability

Under Georgia law, an owner must exercise ordinary care to protect its invitees from unreasonable risks of harm of which the owner has superior knowledge. Ga. CVS Pharm. v. Carmichael, 890 S.E.2d 209, 219 (Ga. 2023). When an injury results from third-party criminal conduct, the relevant question is whether the criminal act was reasonably foreseeable under the totality of the circumstances. Id. at 219–220. Because the totality-of-the-circumstances inquiry is necessarily case specific, there is no "bright-line rule that only certain, specific kinds of evidence must be shown to establish foreseeability." Id. at 224. Indeed, foreseeability is generally a question for the jury. Id. at 225.

Here, Plaintiff does not rely solely on generalized allegations that criminal activity occurred at the hotel. Rather, Plaintiff alleges that eight online reviews during the relevant time described prostitution, drug activity, and other criminal conduct at the property and that guests reported some of those incidents to hotel management. Am. Compl. ¶¶ 52, 55. Plaintiff also alleges that she was repeatedly

trafficked at the hotel over a period of several months and that Defendant's employees observed numerous indicators that Coles was trafficking her. Id. ¶¶ 62, 76. Viewed collectively and accepted as true, Plaintiff's allegations plausibly indicate that Defendant had reason to anticipate the alleged trafficking.

2. Superior Knowledge

Defendant next argues that, even if Plaintiff's trafficking was reasonably foreseeable, Plaintiff cannot establish premises liability because Defendant's knowledge of the danger posed by Coles was not superior to Plaintiff's own knowledge. [Doc. 12-1 at 9]. According to Defendant, because Plaintiff personally experienced Coles' conduct, she necessarily possessed knowledge of the danger equal or superior to Defendant. [Id.]. Plaintiff responds that the superior-knowledge inquiry cannot be resolved at the motion to dismiss stage, and is rather, a question for the jury, because Plaintiff was a minor who was beaten, raped, drugged, coerced, and controlled. [Doc. 14 at 22–24]. The Court agrees that Defendant's argument cannot be resolved at this stage.

Under Georgia law, a plaintiff's knowledge of a hazard bars recovery "only where [s]he exposes h[er]self to the danger voluntarily, that is, without coercion." Suresh & Durga, Inc. v. Doe, 894 S.E.2d 602, 609 (Ga. Ct. App. 2023) (cleaned up). In Northbrook, the Eleventh Circuit explained that the victims were minors who were monitored and assaulted by their traffickers and that, under those

circumstances, the notion that they voluntarily exposed themselves to the danger was "dubious." 171 F.4th at 1276. The court further explained that, even if the superior-knowledge rule applied, "the extent of [two of the plaintiffs'] knowledge of the danger and whether they exercised reasonable care is a question for the jury." Id.

That reasoning applies with particular force at the pleading stage. Plaintiff alleges that she was 16 years old when Coles trafficked her and that Coles beat, raped, drugged, coerced, and controlled her. Am. Compl. ¶¶ 26–28, 41, 62, 70. Under these alleged circumstances, the Court cannot conclude as a matter of law that Plaintiff voluntarily exposed herself to the danger posed by Coles merely because she was aware of his conduct. Nor can the Court determine from the Amended Complaint that Plaintiff's knowledge of the relevant danger was necessarily equal or superior to Defendant's. As Northbrook recognizes, the extent of a trafficking victim's knowledge and the voluntariness of her exposure to the danger are factual questions that may not be resolved as a matter of law where the circumstances permit competing reasonable inferences. Accordingly, Plaintiff has plausibly alleged a premises liability claim.

### C. Plaintiff Plausibly Alleges a Nuisance Claim

Under Georgia law, a nuisance is "anything that causes hurt, inconvenience, or damage to another." O.C.G.A. § 41-1-1. To establish a nuisance claim, a plaintiff

must allege "the existence of the nuisance complained of, that he or she has suffered injury, and that the injury complained of was caused by the alleged nuisance." Bord v. Hillman, 780 S.E.2d 725, 728 (Ga. App. 2015). Nuisance further requires "that the defendant created or maintained a continuous or regularly repeated act or condition on the property," which led to the plaintiff's injury. Camelot Club Condo. Assoc. v. Afari-Opoku, 798 S.E.2d 241, 250 (Ga. App. 2006) (cleaned up). "Where the alleged dangerous condition is the continued presence of criminal activity," a plaintiff may sufficiently allege maintenance of a nuisance by identifying "a series of unlawful activities on the premises in the years preceding the criminal activity at issue." B.W. v. G6 Hospitality Prop., LLC, No. 1:24-CV-00195, 2025 U.S. Dist. LEXIS 259229, *20–22 (N.D. Ga. Feb. 11, 2025).

Defendant argues that Plaintiff fails to state either a public or private nuisance claim. [Doc. 12-1 at 10]. As to a public nuisance, Defendant contends that Plaintiff does not allege that Defendant created or maintained a condition that harmed the public or anyone other than Plaintiff. [Id.]. As to a private nuisance, Defendant argues that Plaintiff's allegation that Defendant maintained a "dangerous criminal condition" is conclusory and fails to identify a nuisance maintained at the hotel. [Id. at 10–11].[1]

[1] Although Plaintiff did not respond to Defendant's public nuisance argument in her Response, at the hearing Plaintiff confirmed that she is continues to pursue both public- and private- nuisance theories.

Plaintiff alleges that Defendant "maintained a dangerous criminal condition" at the hotel and identifies multiple online reviews describing prostitution, drug activity, and other criminal conduct at the property. Am. Compl. ¶¶ 52, 55, 65, 80–81. Some of these reviews indicate that reports of "prostitution and illicit activity" were made to hotel management. Id. ¶ 55. Plaintiff further alleges that the unlawful activity occurred at the hotel before Coles began trafficking her and that Coles repeatedly trafficked her at Defendant's hotel over several months. Id. ¶¶ 5, 9.

Defendant's reliance on the absence of dates associated with the online reviews does not require dismissal. Although in G6 Hospitality, the reviews identified criminal activity occurring over a period of years preceding the plaintiff's trafficking, that case did not establish a categorical requirement that a plaintiff identify the specific dates of the earlier incidents to state nuisance claim. See 2025 U.S. Dist. LEXIS 259229, *21. Rather, consistent with Camelot Club, 798 S.E.2d at 247, the relevant inquiry is whether the plaintiff plausibly alleges a continuous or regularly repeated condition on the property. Id. Plaintiff does so here through her allegations that the unlawful activities preceded her trafficking and that Defendant had notice of prostitution and related criminal activity at the hotel. Am. Compl. ¶¶ 52, 55, 65, 80–81. Thus, Plaintiff has plausibly alleged continuous or regularly repeated criminal condition at the hotel. That Plaintiff does not specify the date of each online review does not, at this stage, require a different conclusion as she has

sufficiently alleged the online reviews were "prior to D.B.'s trafficking." Id. ¶ 7. Accordingly, Plaintiff has sufficiently alleged maintenance of a nuisance.

Defendant separately argues that Plaintiff's public nuisance theory fails because Plaintiff does not allege that the purported nuisance harmed the public or anyone other than Plaintiff. [Doc. 12-1 at 10]. Under Georgia law, "[a] public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. Plaintiff's allegations plausibly support the inference that the alleged nuisance was not confined to Plaintiff. As discussed above, Plaintiff does not merely allege that Coles committed isolated criminal acts against her. Rather, she alleges an ongoing condition at the hotel involving prostitution, drug activity, and other criminal conduct. Am. Compl. ¶¶ 52–55. She further alleges that guests reported those conditions to hotel management. Id. ¶ 55. Thus, the alleged condition also plausibly affected others who came within the sphere of Defendant's hotel. Accordingly, Defendant has not established that Plaintiff's public nuisance theory fails as a matter of law.

**D. Punitive Damages and Attorney's Fees**

Finally, Defendant argues that the Court dismiss Plaintiff's requests for punitive damages and attorney's fees because those remedies are derivative of Plaintiff's underlying claims. [Doc. 12-1 at 11]. Because the Court declines to

dismiss Plaintiff's underlying claims, her derivative request for punitive damages and attorney's fees does not fail.

## IV. Conclusion

For the foregoing reasons the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Amended Complaint. [Doc. 12]. Defendant **SHALL** file its Answer to the Amended Complaint within **14 DAYS** of the entry of this order.

**SO ORDERED**, this 18th day of August, 2026.

Eleanor L. Ross
United States District Judge
Northern District of Georgia